**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

State of West Virginia,
Respondent, Plaintiff below,

vs.) No. 22-0082 (Mineral County 19-F-78)

Tammy Gray,
Petitioner, Defendant below.


**MEMORANDUM DECISION**


The petitioner Tammy Gray ("the petitioner")[1] appeals from her conviction in the Circuit Court of Mineral County, West Virginia, on five counts of burglary, grand larceny, conspiracy, and destruction of property, all charges arising from the theft of items from a home and outbuildings located in the Ellifritz Addition of Fountain, West Virginia. The petitioner contends that her convictions should be reversed because the circuit court severed her trial from that of her codefendant during a hearing at which neither she nor her counsel was present; that her convictions of both conspiracy to commit burglary and conspiracy to commit larceny violated the double jeopardy clause of article III, section 5 of the West Virginia Constitution; and that the circuit court erred in denying her motion to suppress evidence that was seized from her home and vehicle.

Upon careful review of the parties' briefs and arguments, the appendix record, and the applicable law, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.[2]

---

[1] The petitioner is represented by Jeremy B. Cooper. The State is represented by Patrick Morrisey, Attorney General, Lindsay S. See, Solicitor General, and Mary Beth Niday, Assistant Attorney General.

[2] A memorandum decision addressing the merits of this case is appropriate. *See* W. Va. R. App. P. 21(a).

1

The relevant facts are as follows. On July 21, 2019, an anonymous telephone call was made to 911, informing authorities that a white 2009 Chevrolet Impala[3] had been parked along the roadway in front of a home and outbuildings in the Ellifritz Addition owned by James and Jean Nutter ("the Nutters") for approximately five hours, from 11:00 a.m. to almost 4:00 p.m. The caller stated that the petitioner was sitting in the car during this time period. Lt. Chris Leatherman, Capt. J.J. Wingler, and Dep. Logan Talley of the Mineral County Sheriff's Department responded. When they arrived at the scene the Impala was gone, but the officers noticed "a lot of stuff out in the parking area" that "appeared to be stacked out in the driveway . . . to be picked up later[.]" The officers further noticed that the front door to the residence was damaged and had obviously been forced open.

After the officers did a walk-through of the home and outbuildings in order to clear the scene, Capt. Wingler remained to inventory the property strewn around the parking area and to determine what items, if any, were missing from the Nutters' home and/or their outbuildings. Lt. Leatherman and Dep. Talley drove to the petitioner's home, where they observed a white 2009 Chevrolet Impala parked in the driveway, "jammed full of items[.]" Although no one responded to the officers' knock, neighbors advised them that petitioner and another individual had just entered the residence. The officers, who were in possession of two existing search warrants for the petitioner's residence – search warrants that had been issued in connection with investigations into two other recent burglaries[4] − knocked again and, receiving no response, entered through the unlocked door.

Inside the petitioner's home the officers observed that both the petitioner and a male companion, later identified as Clinton Knotts ("Mr. Knotts"), were asleep on the couch, the petitioner in a prone position and Mr. Knotts in a seated position with a trail camera resting on his lap. When the petitioner and Mr. Knotts woke up, the officers patted them down for their (the officers') protection and discovered several pieces of jewelry in Mr. Knotts' pocket: rings and a locket necklace. Both the trail camera and the jewelry were later identified by the Nutters as belonging to them.

Because the officers weren't clear as to whether their existing warrants gave them authority to search the Impala for evidence relevant to the Nutter burglary, they secured the vehicle with evidence tape, had it towed to police headquarters, and obtained a search warrant the following day. This search warrant listed the property to be seized as jewelry,

[3] Information contained in the appendix record indicates that some area residents had a specific reason to be suspicious about this particular vehicle's presence in their neighborhood; however, none of this information was introduced into evidence at the trial.

[4] The petitioner was a suspect in both of the earlier burglaries because neighbors had noticed her car, a 2009 white Impala, at the scenes. *See supra* note 1.

hunting equipment, items used for the assembly or manufacture of a garden pond, landscaping equipment or supplies, a hose, and "any other item that was stolen from the [Nutter]residence[.]" In this regard, because the Nutters were out of town and thus unavailable at that point to provide a more comprehensive list of what had been stolen, the police listed these categories of items based on logical inference from information then known to them: Mr. Knotts' possession of jewelry and a trail camera, and items strewn around the driveway of the Nutters' property which pointed to the perpetrators' interest in landscaping projects.

The petitioner and Mr. Knotts were transported to the police station, where the petitioner gave a statement[5] alleging that Mr. Knotts was the principal actor in the events that had taken place that day. According to the petitioner, Mr. Knotts was the one who actually burgled the Nutters' home and outbuildings while she remained in the car, sleeping and/or playing games on her phone. She claimed to be unaware that Mr. Knotts had entered the house but admitted that she was aware he had entered the outbuildings. She further admitted she assisted Mr. Knotts in loading items into her vehicle, after which she returned to her home, where the officers later found both her and Mr. Knotts asleep on the couch.[6]

The petitioner was indicted on one count of burglary, W. Va. Code § 61-3-11(a) (2020); one count of grand larceny, *id*. § 61-3-13(a) (2020); two counts of conspiracy to commit a felony, *id*. § 61-10-31 (2020), including one count of conspiracy to commit burglary, and one count of conspiracy to commit grand larceny; and one count of destruction of property, *id*. § 61-3-30(a) (2020).

During pre-trial proceedings, the circuit court held an evidentiary hearing on the petitioner's motion to suppress all of the evidence gathered by the police pursuant to the three search warrants discussed *supra*.[7] Counsel argued that none of these warrants described the property to be seized with the particularity mandated by article III, section 6 of the West Virginia Constitution.[8] After hearing the testimony of the witnesses and the argument of counsel, the court disagreed, finding that all three warrants were "fine" and

---

[5] The statement itself was not entered into evidence at the trial; however, Lt. Leatherman testified as to its contents, without objection.

[6] Although the petitioner's house could not be seen from the Nutters' house, it was located in the same neighborhood and was no more than a two-minute drive away.

[7] The docket sheet for the petitioner's case does not reflect that a motion to suppress was ever filed. However, that such a motion was made in some form or fashion is evident from the fact that the circuit court held a hearing on it.

[8] *See* discussion *infra*.

that "there's only so many ways I can describe a blue box, a blue tote, or a green garden hose."

Although the appendix record does not disclose when the circuit court ordered the petitioner to be tried jointly with Mr. Knotts, who had been indicted on identical charges, it is clear that at some point joinder was ordered pursuant to Rule 13 of the West Virginia Rules of Criminal Procedure.[9] There was no objection thereto until the morning of trial, when the prosecutor moved to sever Mr. Knotts' trial from the petitioner's trial on the ground that admission of the petitioner's statement at trial – a statement that incriminated Mr. Knotts as well as the petitioner – would present a confrontation issue under *Bruton v. United States*, 391 U.S. 123 (1968).[10]

Neither the petitioner nor her counsel was present when the severance motion was made and granted. The petitioner states that counsel first learned of it after the fact, when he arrived at the courthouse for trial, and there is no indication in the record that he lodged an objection to the severance, moved for a continuance, or requested any other form of relief. Rather, the petitioner's trial proceeded as scheduled.

Following jury selection and opening statements, the State called four witnesses: the three police officers involved in the investigation and Mrs. Nutter, one of the victims.[11] Although the petitioner's statement was not admitted into evidence, it was briefly summarized by Lt. Leatherman during his testimony as follows: after being duly cautioned as to her rights, the petitioner stated that her only involvement in the charged offenses was to drive Mr. Knotts to the Nutters' home, after which she waited in the car, variously

---

[9] West Virginia Rule of Criminal Procedure 13 provides, in relevant part, that

> [t]he court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information, except that the court may not order a joint trial of more than one defendant in a felony case if a defendant or the state objects.

[10] *See Bruton*, 391 U.S. at 126 (holding that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of [co-defendant's] confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment[,]" overruling *Delli Paoli v. United States*, 352 U.S. 232 (1957)).

[11] The petitioner did not challenge the sufficiency of the evidence at the conclusion of the State's case. *See* text *infra*.

napping and playing games on her phone while Mr. Knotts broke into the home and the outbuildings. The petitioner admitted that she did assist in loading the stolen goods into her car, and transporting them back to her home, where she left the car – still "crammed with stuff" – in her driveway and went into her home to await Mr. Knotts' return. Significantly, the petitioner did not object to Lt. Leatherman's testimony concerning the statement – a statement she had never moved to suppress, even after an inquiry from the circuit court as to her intentions in this regard.[12]

In their respective testimonies, the three police officers described the jewelry and trail camera that had been on Mr. Knotts' person when the officers entered the petitioner's home, as well as the items seized from the petitioner's vehicle pursuant to the search warrant obtained the day after the incident at the Nutter home.[13] The only items of physical evidence admitted at trial were photographs of the Nutter residence, photographs of the items seized pursuant to the search warrant, the property receipt for those items, and the petitioner's signed *Miranda*[14] rights form.

Following the testimony of the State's final witness, Mrs. Nutter, both parties rested and, after closing arguments and the court's instructions, the jury retired to deliberate. The petitioner was convicted on all five counts in the indictment and received an effective

---

[12] During a pre-trial suppression hearing on the petitioner's challenges to the search warrants, the circuit court inquired as to whether the petitioner was seeking to suppress her statement to the police, as follows:

> THE COURT: All right. So what do you want me to do? Are we going to try to suppress [the statement] or what?
>
> [DEFENSE COUNSEL]: No, Your Honor, I don't have a motion to suppress.

[13] The relevant items were described on the property receipt as an old metal gas can, silver and blue in color; a bag of peat moss; a Thinco Industries 15-gallon sprayer; a large blue bucket with rope handles; a Summit tree stand, aluminum with a camouflage seat; a blue milk crate with landscape edging and a green tarp in it; a Warner six-foot aluminum stepladder; a folding chair with a case; a Garrett Ace metal detector; a green extension cord; two pieces of plastic pipe; a black plastic garden pond liner with a plant; a partial jug of Bitefighter torch fuel; a submersible water pump, designed for use in the garden pond; a solar outdoor landscape light kit; a solar outdoor light shaped like a butterfly; a solar outdoor light shaped like a hummingbird; a partial bag of Dr. T's snack [sic] repellant; a partial bottle of Smart pond algaecide; a metal flower pot with a hanging hook; and a black bungee strap.

[14] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

sentence of three to twenty-five years in the penitentiary. Specifically, her sentence on the burglary charge (one to fifteen years) and her sentences on the two conspiracy charges (one to five years each) were set to run consecutively, while her sentence on the grand larceny charge (one to five years) and her sentence on the destruction of property charge (one year in the regional jail) were set to run concurrently with the aforesaid sentences. This appeal followed.

## A. Right to be Present at a Critical Stage of the Proceeding

In the petitioner's first assignment of error, she claims that she was denied her right to be present during what she argues was a critical stage of the criminal proceeding against her: the hearing on the State's motion to sever Mr. Knotts' trial from the petitioner's trial. It is undisputed that neither the petitioner nor her counsel received notice of this hearing, and that neither learned of it until after the fact, when they arrived at the courthouse on the morning trial was set to begin.

The petitioner argues that her absence from this hearing, either personally or by counsel, was constitutional error, and that prejudice is therefore conclusively presumed. In this regard, she cites *Van v. Jones*, 475 F.3d 292 (6th Cir. 2007) for the proposition that "[t]he [Supreme Court of the United States] has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 305 n.25. Alternatively, the petitioner argues that in the event this Court finds the error, although constitutional, to be subject to a harmless error analysis, she is still entitled to reversal of her conviction for two reasons: first, in the absence of her codefendant, *Bruton*[15] did not come into play and her statement therefore became admissible at trial; and second, her counsel, who had prepared for a joint trial right up to the morning of trial, was suddenly forced to proceed to a single defendant trial.

This Court has held that

> [a] defendant is constitutionally guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome, if his or her presence would contribute to the fairness of the procedure. We held in Syllabus point 6 of *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977), that "[t]he defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his

---

[15] *See supra* note 8.

6

absence was harmless." *See also Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). We also have held that "[a] critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." Syl. pt. 2, *State v. Tiller*, 168 W. Va. 522, 285 S.E.2d 371 (1981).

*State v. Tex B.S.*, 236 W. Va. 261, 264, 778 S.E.2d 710, 713 (2015). In this case, although the State acknowledges the rule first articulated in *Boyd*, it argues that it is not applicable. Because there is no constitutional right to be tried jointly with one's codefendant, the State reasons, a hearing on a motion to sever the codefendant's trial is not a "critical stage" within the meaning of the case law. In contrast, the petitioner argues that there is no support for the proposition that a critical stage must concern an issue of constitutional magnitude; rather, "[a] critical stage of a criminal proceeding is where the defendant's right to a fair trial will be affected." *State v. Sites*, 241 W. Va. 430, 444, 825 S.E.2d 758, 772 (2019) (citing Syl. Pt. 2, *State v. Tiller*, 168 W. Va. 522, 285 S.E.2d 371 (1981)).

As a threshold matter, we must consider whether this issue was properly preserved for appellate review because, as set forth *supra*, there is no indication in the record that after the petitioner's counsel learned of the severance[16] he lodged an objection with the circuit court, moved for a continuance, or requested any other form of relief from the court in regard to this ruling at any point during the trial or even in a post-trial motion. *See, e.g.*, *State v. Miller,* 194 W.Va. 3, 17, 459 S.E.2d 114, 128 (1995) ("'One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue.") (citation omitted)). In her brief, the petitioner states that "[f]or all we know, the [p]etitioner did object upon learning of the severance[,]" and alleges that

> [t]he Circuit Court was derelict in failing to make any record on the manner in which it informed the Petitioner of its ruling (if it ever even explicitly did so, rather than allowing trial counsel to come to his own conclusions implicitly) between the end of the severance hearing and the beginning of jury selection.

---

[16] As previously mentioned *supra*, the petitioner states that her counsel learned of the severance from Mr. Knotts' counsel upon her counsel's arrival at the courthouse on the morning of trial.

This argument wholly misses the mark. If counsel learns from any source of an occurrence that will prejudice his or her client, it is incumbent upon counsel, not the court, to raise the issue on the record and seek a ruling thereon. Accordingly, we decline petitioner's invitation to speculate ("for all we know . . .") as to what counsel did or didn't do, and find that the issue, raised in the first instance on appeal, may only be reviewed for plain error.[17]

> This Court's precedents have uniformly held that
>
> > """'The plain error doctrine of W. Va. R Crim. P. 52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result.' Syllabus Point 2, *State v. Hatala*, 176 W. Va. 435, 345 S.E.2d 310 (1986)." Syl. Pt. 4, *State v. Grubbs*, 178 W. Va. 811, 364 S.E.2d 824 (1987).' Syl. Pt. 3, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016)."

Syl. Pt. 3, *State v. Wilson*, 244 W. Va. 370, 853 S.E.2d 610 (2020). In this regard, the test for plain error is a rigorous one:

> > """'To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceeding.' Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)." Syl. Pt. 4, *State ex rel. Games-Neely v. Yoder*, 237 W. Va. 301, 787 S.E.2d 572 (2016).'

*Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4.

---

[17] The petitioner has not sought plain error review, even as a fallback position, contending that any failure to object on her counsel's part was the fault of the circuit court. Nonetheless, "'[t]his Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, sua sponte, in the interest of justice, notice plain error.' Syllabus point 1, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998)." Syl. Pt. 1, *State v. McDonald*, No. 21-0796, 2023 WL 2945044, __ W. Va. __, __ S.E.2d __ (W. Va. Apr. 14, 2023).

We find it unnecessary to determine whether the hearing on the State's motion to sever Mr. Knotts' trial from the petitioner's trial was a critical stage in the proceeding,[18] a question relevant to the first three prongs of the plain error analysis, because there is not a scintilla of evidence in the record to support a finding that the petitioner's absence from that hearing "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceeding." *Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4, in part. The petitioner first argues that the severance of Mr. Knotts' trial was fundamentally unfair because in his absence, the petitioner's statement became admissible in evidence. However, the petitioner clearly and unequivocally waived her right to appellate review of this issue, including plain error review, when in response to the circuit court's inquiry as to whether counsel was going to move to suppress the statement, he specifically declined: "No, your honor, I don't have a motion to suppress." *See State v. Crabtree*, 198 W. Va. 620, 630, 482 S.E.2d 605 615 (1996) ("[T]he first inquiry under [Rule 52(b) of the West Virginia Rules of Criminal Procedure] is whether there has in fact been error at all. . . . [D]eviation from a rule of law is error unless there is a waiver. Waiver . . . is the '"intentional relinquishment or abandonment of a known right."' . . . [W]hen there has been such a knowing waiver, *there is no error* and the inquiry as to the effect of the deviation from a rule of law need not be determined.") (citing *Miller*, 194 W. Va. at 18, 459 S.E.2d at 129) (emphasis added).[19] Further, and critically, the petitioner does not even suggest, let alone argue, any legal basis on which the petitioner's statement could be deemed inadmissible in evidence against her.

Additionally, the petitioner argues that her exclusion, and that of her counsel, from the severance hearing was prejudicial because counsel was forced to go to trial in the absence of any notice that Mr. Knotts' trial had been severed from the petitioner's trial. However, the petitioner failed to object to the severance when her counsel learned of it, did

---

[18] *See Tiller*, 168 W. Va. at 522, 285 S.E.2d at 371, Syl. Pt. 2.

[19] It could be argued that at the time counsel declined to make a motion to suppress he reasonably believed the statement would be excluded from evidence pursuant to *Bruton* in what was anticipated to be a joint trial. *See supra* note 10. However, counsel never made this (or any other) argument after learning that Mr. Knotts' trial had been severed; rather, when Lt. Leatherman testified at trial as to the content of the petitioner's extrajudicial statement, counsel did not object. Thus, assuming, arguendo, that counsel could somehow have resuscitated this otherwise dead issue by objecting to the admission of the petitioner's statement at trial, his failure to object constituted a forfeiture. *See Miller*, 194 W. Va. at 18, 459 S.E.2d at 129. And in any event, it has been held that "if a defendant waives a right (which is waivable), he cannot later raise an objection on the grounds that the failure to provide him with the waived right is error." *United States v. David*, 83 F.3d 638, 641 n.5 (4th Cir. 1996) (cited with approval in *Crabtree*, 198 W. Va. at 616, 482 S.E.2d at 631).

not articulate any specifics as to how counsel's trial preparation or overall trial strategy were affected by the severance, and did not move for a continuance in order to prepare or re-strategize. In a similar vein, the petitioner's argument on appeal is wholly conclusory; she alleges that the severance prejudiced her but gives this Court no information as to what the prejudice was and how it affected her trial strategy – if at all. It is not for an appellate court to fill in the blanks of a silent record and a silent brief; this Court will not speculate as to the existence of prejudice where none was articulated below or on appeal. *See In re Christina L.*, 194 W. Va. 446, 454, 460 S.E.2d 692, 700 (1995) ("This Court will not speculate as to what the arguments of counsel would have been or as to their potential effect on the circuit court.").

In light of the foregoing, we find that the petitioner has failed to establish that her exclusion from the hearing on the State's motion to sever the codefendants' case from her own constituted plain error which "seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4, in part. We therefore afford the petitioner no relief on the basis of this assignment of error.

## B. Double Jeopardy

The petitioner's second assignment of error is that she was improperly convicted of two counts of conspiracy to commit a felony – specifically, Count II, conspiracy to commit burglary, and Count IV, conspiracy to commit grand larceny – in a case where the evidence demonstrated the existence of only one agreement. The gist of that single agreement, the petitioner argues, was set forth in the text of Count I, the burglary charge, which alleged that the burglary was committed "with the intent to steal items" from the "residence and outbuilding." Thus, the petitioner argues, the scope of the conspiracy to commit grand larceny, Count IV, was wholly subsumed within the conspiracy to commit burglary, Count II.

As was the case with respect to the petitioner's first assignment of error, our initial inquiry is whether this issue was properly preserved for appellate review. In this regard, the petitioner candidly acknowledges that the issue was not raised in pre-trial proceedings, at trial, or in a post-trial motion. She argues that this Court should nonetheless consider the issue on plain error review because it is "the sort of clear and obvious error that necessitates relief," that trial counsel's failure to preserve the issue for appellate review "would almost certainly result in collateral relief in an ineffective assistance of counsel claim," and that the prejudice is obvious because the circuit court set the sentences on the two conspiracy counts to run consecutive to each other.

We agree that resolution of this issue is governed by this Court's established test for plain error, set forth *supra* in detail. *See id.*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pts. 3 & 4. The petitioner frames the issue solely as one involving the double jeopardy clause

10

of the West Virginia Constitution[20] which "prohibits multiple punishments for the same offense[.]"[21] Thus, our inquiry in this case is whether Ms. Gray received multiple punishments for the same offense.

**AN ERROR**. As stated, the first issue to be determined on plain error review is whether the circuit court committed error in sentencing Ms. Gray for two separate conspiracies. *See id.*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4.

In West Virginia, "a conspiracy to commit one or more substantive crimes does not mean an accused may be charged with conspiracy to commit each separate crime." *State v. Johnson*, 179 W. Va. 619, 630-31, 371 S.E.2d 340, 351-52 (1988). As we explained in *Johnson*, "[t]he double jeopardy clause of the Fifth Amendment prohibits the prosecution of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed." *Id.* at 622, 371 S.E.2d at 343, Syl. Pt. 7 (regarding the Fifth Amendment of the United States Constitution). The court should examine the totality of the circumstances to determine "whether single or multiple conspiracy agreements exist." *Id.* at 630, 371 S.E.2d at 351. The factors we have set forth for courts to consider "under a totality of circumstances test" are

> (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place.

*Id.* at 622, 371 S.E.2d at 343, Syl. Pt. 8, in part. The prohibition on the prosecution of the multiple conspiracies, with only one agreement, also prohibits multiple conspiracy convictions and sentences on only one agreement. *See State v. Judy*, 179 W. Va. 734, 737, 372 S.E.2d 796, 799 (1988) (concluding that "as a matter of law that the defendant's multiple conspiracy convictions were improper under *Johnson*").

---

[20] Article III, section 5 of the West Virginia Constitution provides, in relevant part, that "nor shall any person, in any criminal case . . . be twice put in jeopardy of life or liberty for the same offense."

[21] Syl. Pt. 2, in part, *State v. Kent*, 223 W. Va. 520, 678 S.E.2d 26 (2009) (holding that double jeopardy clause "prohibits multiple punishments for the same offense").

Applying these *Johnson* factors to the evidence adduced at trial, we first note that the evidence of any agreement between the petitioner and Mr. Knotts was wholly circumstantial; the petitioner's statement was silent on this point, and there was no evidence as to any conversations between the two bearing directly upon their intentions.[22]

As a threshold matter, it is well established in our case law that a conspiracy may be proved by circumstantial evidence. *See, e.g.*, *State v. Bouie*, 235 W. Va. 709, 722, 776 S.E.2d 606, 619 (2015) ("Lacking any witness who could testify concerning communications between Bouie and Payne, the prosecution was obliged to demonstrate their agreement by resort to circumstantial evidence. The requisite level of certainty as to an agreement of any sort could be established by showing that both men were present when – as the physical evidence suggested – one of them began to cut the screen out of Poindexter's window to gain access to the apartment."). In the instant case, the State had ample circumstantial evidence to support the existence of an agreement to steal items from the Nutters' home and/or outbuildings: the fact that the petitioner and Mr. Knotts went together to the Nutters' property in the petitioner's 2009 white Impala; that the petitioner waited patiently for hours while Mr. Knotts entered the outbuilding and broke into the house; that the petitioner helped Mr. Knotts load the stolen goods into her vehicle; and that the petitioner took that vehicle, packed with items taken from the Nutters' property, back to her home. However, in light of the totality of the circumstances, our review of the record discloses no evidence, circumstantial or otherwise, from which it could reasonably be found that the petitioner and Mr. Knotts entered into two separate conspiracies, one to commit burglary and another to commit grand larceny. On this point, our analysis in *Johnson* is dispositive:

> In the present case, we conclude as a matter of law that only one conspiracy case was shown by the evidence. Viewing the evidence in the light most favorable to the State, only one agreement was proven – an agreement to rob the store. *The fact that the act of robbing the store constituted two distinct crimes, breaking and entering and larceny, cannot transform one agreement into two agreements under the conspiracy statute.* The totality of circumstances test would show the time, persons acting as co-conspirators, and the place where the events

---

[22] The only conversations referenced in the petitioner's statement had to do with Mr. Knotts' request, after he and the petitioner had arrived at the Nutters' property, that the petitioner return home and empty a trailer which was attached to the Impala. Mr. Knotts was annoyed when the petitioner returned without the trailer, as his intentions had apparently been for her to empty it at her home and then bring it back. Her failure to do so was the reason the Nutters' property ended up being crammed into the car.

alleged as a part of the conspiracy took place were substantially the same. The statutory substantive offenses charged were the same as the overt acts charged in the two conspiracy charges, i.e., (1) breaking and entering and (2) larceny. Consequently, the defendant's conviction of two conspiracy offenses constituted a violation of the foregoing established double jeopardy principles.

179 W. Va. at 630-31, 371 S.E.2d at 351-52 (emphasis added). Thus, we conclude that the first prong of the plain error test is satisfied: The circuit court violated the prohibition against double jeopardy and erred by sentencing Ms. Gray for two conspiracies, when the evidence only showed one agreement, thus punishing her twice for a single crime.

AN ERROR THAT IS PLAIN. Under the facts and circumstances of this case, this prong of the plain error test requires little discussion. *See id.* There are few principles more firmly established in our jurisprudence than this: an individual can only be sentenced once for a single crime. Where, as here, the State failed to present any evidence that the petitioner and Mr. Knotts entered into more than one agreement, we conclude that the second prong of the plain error test, *id.*, is satisfied; the circuit court's error in sentencing Ms. Gray twice for the same crime was plain.

AN ERROR THAT AFFECTS SUBSTANTIAL RIGHTS. As a corollary to the jurisprudential principle set forth in the preceding discussion, every defendant in a criminal case has the right, secured by article III, section 5 of the West Virginia Constitution, not to "be twice put in jeopardy of life or liberty for the same offense," which is exactly what happened when the court imposed consecutive sentences on the two conspiracy counts. *See* text *infra*. Thus, we easily conclude that the third prong of the plain error test is satisfied; the circuit court's error in sentencing Ms. Gray twice for the same crime affected the petitioner's constitutional rights and was thus substantial error beyond question. *See Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4.

AN ERROR THAT SERIOUSLY AFFECTS THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF THE JUDICIAL PROCEEDING. The petitioner claims that in a case where the evidence at trial proved the existence of only one agreement between coconspirators, not only her convictions on two counts of conspiracy but also the circuit court's imposition of consecutive sentences thereon violated her rights under article III, section 5 of the West Virginia Constitution, which prohibits being "twice put in jeopardy of life or liberty for the same offense." *See supra* note 19. We agree. Under the facts and circumstances of this case, both our jurisprudence and that of the United States Supreme Court support this conclusion. *See Johnson*, 179 W. Va. at 622, 371 S.E.2d at 343, Syl. Pt. 7 ("The double jeopardy clause of the Fifth Amendment prohibits the *prosecution* of a single conspiracy as two or more conspiracies under a general conspiracy statute merely because two separate substantive crimes have been committed.") (emphasis added); *see also State v. Buracker*,

13

No. 18-0831, 2020 WL 261741, at \*3 (W. Va. Jan. 17, 2020) (memorandum decision) (acknowledging syllabus point seven of *Johnson* as governing law but distinguishing that case because the proof in *Buracker* was sufficient to establish that "on at least two occasions, on two different days, two separate conspiracies occurred and resulted in two distinct drug sale transactions."). Further, with respect to the consecutive sentences imposed by the circuit court on the petitioner's convictions for conspiracy to commit burglary (Count II) and conspiracy to commit grand larceny (Count IV), the seminal case is *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173 (1873), wherein the United States Supreme Court wrote that "the Constitution was designed as much to prevent the criminal from being twice *punished* for the same offense as from being twice *tried* for it.") (emphasis added). In *State v. John H. B.*, No. 18-0905, 2019 WL 5092948, at \*4 (W. Va. Oct. 11, 2019) (memorandum decision), this Court noted its wholehearted agreement, citing *Ex parte Lange* for the sweeping proposition that "[i]f there is anything settled in the jurisprudence of England and America, it is that no man [or woman] can be twice lawfully punished for the same offence." *Id*. at \*4.

In light of the foregoing authorities, we can, again, easily conclude that the fourth prong of the plain error test is satisfied. *See Wilson*, 244 W. Va. at 372, 853 S.E.2d at 612, Syl. Pt. 4. Because the petitioner was prosecuted, convicted, and punished on two counts of conspiracy, but the evidence at trial demonstrated the existence of only one agreement between the conspirators, it is clear that the violation of the petitioner's double jeopardy rights – rights "settled in the jurisprudence of England and America" – affected the fairness, integrity, or public reputation of the judicial proceeding. *See John H.B.*, 2019 WL 5092948, at \*4.

For all of these reasons, we reverse the circuit court insofar as it sentenced the petitioner on two counts of conspiracy, and instruct the circuit court, on remand, to vacate one of the petitioner's conspiracy convictions, render a judgment of not guilty on that charge, and resentence the petitioner accordingly.

### C.     Search and Seizure

In the petitioner's final assignment of error, she alleges that the circuit court erred in denying her motion to suppress the evidence gathered by police pursuant to all three of their search warrants: the two in their possession at the time they entered the petitioner's home, and the warrant they secured the following day to search her vehicle. Our standard of review is two-faceted. This Court has held that

> "'[w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the

14

circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.' Syl. Pt. 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996)."

Syl. Pt. 2, *State v. Payne*, 239 W. Va. 247, 800 S.E.2d 833 (2016).  On the other hand,

"'[i]n contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. . . . Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.' Syl. Pt. 2, in part, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996)."

*Payne*, 239 W. Va. at 249, 800 S.E.2d at 835, Syl. Pt. 1.

It is important to emphasize that the petitioner's sole argument with respect to all three search warrants is that they failed to describe the items to be seized with the particularity required by article III, section 6 of the West Virginia Constitution, which provides:

The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or things to be seized.

More specifically, the petitioner contends that because the warrants contained "generic terms" describing "items common [sic] found in any home[]" (such as "jewelry" or "landscaping supplies"), they had the effect of allowing "an expansive seizure in the nature of a general search." *See, e.g.*, *State v. Lacy*, 196 W. Va. 104, 111, 468 S.E.2d 719, 726 (1996) ("When a warrant is the authority for the search, the executing officer must act within the confines of the warrant. More pertinent to this case, the police may not use an initially lawful search as a pretext and means to conduct a broad warrantless search."). For this reason, the petitioner argues, the circuit court erred in its "decision to allow in all of the seized items[.]"

15

We find that the petitioner's argument fails for several reasons. First, with respect to the first two warrants, the petitioner's suppression issue is wholly theoretical. None of the items described in these warrants had anything to do with the burglary of the Nutters' home; indeed, none of them were even mentioned at the petitioner's trial, let alone admitted into evidence. The only relevance of the initial warrants is that they gave the officers the right to enter the petitioner's home when their attempt to do a "knock and talk"[23] failed. In this regard, the petitioner does not argue that the officers' entry into the home was unlawful because the warrants lacked particularity, or that it was otherwise unlawful for any other reason. Further, the petitioner does not contest that the trail camera was found in plain view, on Mr. Knotts' lap, when the officers entered the petitioner's home, or that the pat-down search of Mr. Knotts, which yielded the jewelry stolen from the Nutters' home, was lawful.

Additionally, with respect to the third search warrant for the petitioner's vehicle, there is no support in our precedents for the proposition that items commonly found in homes must be described in a search warrant with some enhanced layer of particularity, i.e., with some additional descriptors. To the contrary, the law requires only that

> [i]n determining whether a specific warrant meets the particularity requirement, a circuit court must inquire *whether an executing officer reading the description in the warrant would reasonably know what items are to be seized*. In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized.

*Lacy*, 196 W. Va. at 107, 468 S.E.2d at 722, Syl. Pt. 3, in part (emphasis added). We find that the listing of categories of items in the third warrant is sufficient to meet these requirements. The categories were developed by the officers based on the types of items stacked in the Nutters' driveway in plain view and/or found on Mr. Knotts' person during a protective pat-down, and thus the officers "reasonably knew" what items they were looking for. On the facts and circumstances of this case, we cannot say that the circuit

---

[23] *See Gable v. Gable*, 245 W. Va. 213, 227 n.10, 858 S.E.2d 838, 852 n.10 (2021) ("Called the 'knock and talk' rule, courts hold that any individual, including a law enforcement officer without a warrant, has an implicit license to approach the front door of a residence to knock and make inquiries. *See, e.g.*, *State v. Dorsey,* 234 W. Va. 15, 19, 762 S.E.2d 584, 588 (2014). However, regardless of whether the person knocking is a private citizen or a police officer, the homeowner has no obligation to open the door or speak to the person knocking").

court's findings to this effect were clearly erroneous. *Id*; *see also Payne*, 239 W. Va. at 247, 800 S.E.2d at 719.

In summary, we find that any alleged lack of particularity in the first and second warrants is irrelevant, as no evidence seized pursuant to those warrants was entered into evidence at the petitioner's trial and the petitioner does not contest the officers' authority to enter her home. Further, the circuit court's finding that the description of items to be seized in the third warrant was constitutionally sufficient was based on supportable factual findings and was legally sound. The petitioner is not entitled to relief on the basis of this assignment of error.

## IV. Conclusion

For the foregoing reasons, the judgment of the circuit court is affirmed, in part, reversed, in part, and remanded with instructions for the court to vacate one of petitioner's conspiracy convictions, render a judgment of not guilty on that charge, and resentence the petitioner accordingly.

**ISSUED:** June 15, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn